Our second case for today is Walker v. Price. Mr. Peterson. Gregory Peterson Thank you, Your Honor, and may it please the Court, my name is Gregory Peterson, and I along with my co-counsel Sam Halter rise today on behalf of Frederick Walker. We do so pursuant to Illinois Rule 711 through the Bloom Legal Clinic at Northwestern Pritzker School of Law. Your Honors, we request that you reverse the district court and remand for a new trial for three main reasons. First, that the district court abused its discretion in denying Mr. Walker appointment of counsel. Second, that it also abused its discretion in holding the trial by videoconference. But third, and most importantly, even though these two errors are independently grounds for rehearsal, the cumulative effect of these errors and a host of smaller errors was enough to deny Mr. Walker a fair trial. I'd like to turn to the appointment of counsel issue first because it's what happened first and because it infected the rest of the trial. The district court on Mr. Walker's application for appointment of counsel correctly pointed to the right case. It pointed to Pruitt v. Moat, which this court set forward the standard in which the court is to balance the capabilities of the plaintiff to litigate his own case against the complexity of the case. But it implied that standard wrongly. The district court's consideration of Mr. Walker's capabilities, for instance, was essentially no more than an account of the complexity of the case. They said this case is simple, he'll know who to call, he was there, he saw it. This isn't an issue of his capabilities. His capabilities are what he raised in his first motion for counsel and expanded on in his second motion for counsel. He has a full-scale IQ of 76. He has a history of mental health treatment. And in addition to these internal faults, they were external faults as well. He's a prisoner sitting in a jail cell with only access to the law library once a month. Does that mean that every prisoner who brings a civil case is then entitled to recruited counsel? Absolutely not, Your Honor, but it does weigh in that favor. And these also continued as the case went on. It was harder and harder for Mr. Walker to have access to the legal documents he was looking for, even to the point where he alleged... But that would be true of every prisoner of a civil case, right? So I'm just trying to figure out what the line is here. If the Seventh Circuit has not said that in every civil case brought by a prisoner, the prisoner is entitled to recruited counsel, which clearly isn't the rule, what makes Mr. Walker different? Because everything you're saying would be true of anyone, that it would be difficult to have access to cases, you're a prisoner, you're not a lawyer, all of those things would always be true. Well, even at the start, Your Honor, if Mr. Walker looked to the district court, and we don't expect the district court at that point to be doing miles and miles of research on its own to figure that out. But by the end of the case, it should have become apparent to the district court that this was not an everyday case. Mr. Walker's case made it to trial. A 1983 action, a civil rights claim brought by a pro se prisoner made it to trial. This is not something that a district court faces on an everyday basis. Is there precedent for an obligation on the part of the district court to reevaluate its decision over the course of the proceedings and say, Sua Sponte, now I think counsel's appropriate, or now I think you should have recruited counsel, as opposed to just a one and done, making the decision at the beginning based on the available information to the judge, and then the decision's made. Do you have precedent for kind of what you're arguing for as the complexity goes on? Not a Sua Sponte analysis, Your Honor. But it's not a one and done either, because Mr. Walker continually filed motions asking again and again, and providing more reasons each time. He wasn't simply renewing his motion. He was renewing his motion with additional evidence, with additional things to point to. And the court does have to take those motions on the merits. It's not allowed to simply repeat the boilerplate and say, we denied you counsel. We'll continue to deny you counsel. For instance, Mr. Walker's IQ was not present in that first moment, and then it was added in. When Mr. Walker talked about the issues that had been going on during discovery, those weren't apparent at the start of the case, for instance. Which were what kind of issues? The biggest issue, Your Honor, is that Mr. Walker wanted the defendants to produce a video of the hallway at the time of the incident. The defendants delayed. The defendants switched lawyers. The defendants eventually, when the district court- But the district court intervened and got him the evidence, right? No, the district court intervened but didn't get him the evidence, Your Honor. By that point, the video was not there. There is no concrete video retention policy at the prison, so it may be a spoliation issue. It may have simply been taped over. But what the district court did not do was catch Mr. Walker's phrasing in the request. He was looking for a video of the hallway. By the time the district court ordered them, they asked for a video of the incident, which allowed the defendants to testify no video exists because under the defendant's theory of the case, no incident exists. And this carried on through trial. But is it your position, because part of what you have to show is prejudice, too. So is it your position that had he had counsel, he would have been able to obtain a video of the hallway? And had he obtained a video of the hallway, the outcome of the proceeding- I mean, there are a lot of steps you have to get to. The outcome of the proceeding would likely have been different. It's highly probative evidence, Your Honor. Do you know that it even existed? We don't, Your Honor, because as I said, it may have been gone by the time he actually got it. So if he had a lawyer, the lawyer would have filed a notice to produce immediately and therefore basically had a litigation hold on everything. That or at least gotten the adverse inference in. At least gotten to tell the jury, there's no video for you, but they didn't keep the video and I want you to think about what that means. This went to a jury trial, so there's this issue of attempting to convince the jury. This is not something that an everyday pro se prisoner faces. While preparing for oral argument, for instance, we looked at the number of these cases that actually happened. And it's right around 1% of 1983 actions make it to trial. Now this isn't pro se 1983 actions. That 1% number even includes those prisoners that are represented by counsel. So this is a small number of cases. Did your client renew his motion for recruitment of counsel on the eve of trial? He did not, Your Honor. Part of the reason for that, I have to assume, is that the eve of trial, he was also filing motion after motion saying, I don't have any legal materials. At one of the final pretrial conferences, just a week before trial, one of the things that Judge Baker did was ordered the defense lawyers to look into getting him his legal materials back. So that's the burden that he was dealing with while trial was imminent. Was he in segregation this entire time? Yes. And as best as we can understand, that's true of the majority of the prisoners at Pontiac. All right. It is correct, isn't it, that the district court at one point did appoint counsel for him? Mr. Walker found the counsel. Mr. Walker, as part of his original motion for counsel, he contacted a host of legal clinics. He contacted Kirkland and Ellis, who had represented him in a previous case, and he eventually got in touch with Harold Hirschman. That appointment didn't work out because of the record says irreconcilable differences. We've talked to Mr. Walker about it, but unfortunately it's covered by privilege, and we haven't had the chance to ask him to waive that. But the district court did not provide Mr. Walker with that counsel. Mr. Walker found his own counsel, and the district court— But had the benefit of it for a time? Had the benefit of it for possibly as much as a few hours, Your Honor.  So did he ever enter an appearance? He entered an appearance and then later in that same pretrial conference dissolved his representation of Mr. Walker. Did he file anything other than the motion to withdraw? No, Your Honor. That is it. And as far as we can tell from the record, he also never met Mr. Walker in person, for instance. That entire conference was conducted over video. But I would like to turn to this video issue because the entire trial was conducted over video conference. And similarly, as to the appointment of counsel issue, the district court pointed to the correct case. They said it's stone, it's applied most recently by this court in Perotti. But the standard, again, was a balancing standard issued by this court that the district court didn't essentially balance on. It asks the district court to balance essentially the harm of bringing the prisoner to court, whether it be cost, whether it be danger, against the harm to the prisoner of not being able to present his case in person. Now, this harm factor, Mr. Walker's disciplinary record, received extensive treatment in the district court's order. And we acknowledge that the district court is fully allowed to look at one factor and be more persuaded by that than the others. We even acknowledge that not every factor needs to receive mention. There's a factor in the Stone inquiry, for instance, about the likelihood of just postponing trial until the prisoner gets out of prison. The fact that the district court mentioned that or didn't mention that shouldn't play a role in whether or not it properly used its discretion. But what it didn't properly consider is the harm to Mr. Walker of having to attempt to present this case by video, having to manage not only the live trial, which was exceedingly difficult for Mr. Walker, but to manage it over a video screen where he had to make himself clear. He had to not only... Well, the judge did consider that, right? Because the judge said that the jury would probably be able to see him better on the video screen than it would if he was present in the courtroom. So the judge considered it. It might be a different question. I mean, I think you think that the judge reached the wrong conclusion, but the judge did consider it. The judge used the word see Mr. Walker. And seeing and hearing, for one thing, are different issues. And Mr. Walker's intelligibility, I would argue, is more an issue of being heard. But also, the courtroom has a large video screen. That's the language in the order. Judge Myerscoff's courtroom. This case was transferred to Judge Baker, who never reconsidered the issue, never said anything about his courtroom. Now, if Judge Baker had, upon the case being transferred to him, issued an order saying, I've read Judge Myerscoff's order. I've read what the defendant's produced. I agree that he's dangerous. And my courtroom is good. I'm experienced at this. Then we wouldn't be raising this issue. How did that happen? It went to Judge Baker. Was there a conflict where Judge Myerscoff had to do the criminal thing? The trial was postponed time and time again, Your Honor. And then when it was originally... Displaced by a criminal trial, probably. Displaced at one point by the possible appointment impending of Mr. Hirschman. Displaced again by the fact that a key defendant, Gwendolyn French, was on vacation during the trial and wouldn't be available. And the final displacement appears to be because the video technology, either at Pontiac or the courtroom, was not available at the day in question. I don't know from the record. It's not clear as to why Judge Myerscoff was not able to follow that last transfer. That was just my question. Why didn't they take over? Because he doesn't have a history in the case. None whatsoever, Your Honor. Are you complaining about that or does that matter? We're not raising it today other than the extent to which his lack of history in the case shows that he should have taken a look, now that the video technology was different, now that the courtroom was different, and now that the judge was different. He should have taken a look and made an order there. And, for instance, Judge Myerscoff's order includes a possible curative instruction to avoid prejudice, saying they'll tell the jury that the reason Walker's testifying by video is about cost. That instruction never happened in the trial. And we ask that you reverse, and I would like to reserve the remainder of my time for rebuttal. Thank you, Counselor. Mr. Biscott? May it please the Court? My name is Frank Biscott, and I represent the defendants. This Court should affirm the judgment on the jury's verdict in favor of the defendants because the District Court validly exercised its discretion to deny Walker's request to recruit counsel and to conduct the trial by video conference. In addition, Walker received a fair trial, and his assertions of plain and cumulative error failed to meet either of those exacting standards. First, the District Court validly exercised its discretion to deny Walker's request for counsel because it applied the correct legal standard and reasonably concluded on the evidence that was before it that Walker could proceed pro se. Are you aware of the recent case of James v. Eli? Yes, I did look at it. Okay, you looked at it. Did you read it? Yes. Okay. Did you read Judge Flound's comment that the complexity of a case increases and competence decreases as the case proceeds to advanced stages of litigation, and they reversed the denial of counsel in that case, which is on summary judgment, not a trial? Yes, Your Honor. How do you distinguish this? Well, the difference here, and the District Court here took account of the exact same thing, actually, as at each order the court accounted for the stage in the litigation to which the case had proceeded, and what I want to really draw the court's attention to is the denials of the fifth and sixth requests, the final two denials. The fifth request is pages 13 and 14 of the appendix. The sixth request is the denial is page 20, and to compare those two. At the fifth request, the court, based on the evidence that was before it, said that counsel was not required at that time but recognized that the case was going to go to trial and that it would attempt to recruit counsel to represent Walker at trial. It was not until the sixth and final denial of the request for counsel that the court said, well, Walker doesn't need counsel at trial, and the difference is that in the interim the court had the opportunity to observe Walker's performance at a couple of videoconference pretrial hearings, and the court pointed to that in its order denying the sixth and final request for counsel. So what this shows is that, first of all, unlike the court did not simply give boilerplate reasons for why to deny counsel, the court considered new information as it came before it, here the observations that the court had of Walker's abilities, and that the court did take into account that things get harder when you get to trial and that there are certain make-or-break moments, one of them being trial, where perhaps counsel could be more important. I mean, the record shows that the court had every intention of recruiting counsel at the time of the fifth request, and it wasn't until the sixth one that the court decided that counsel was unnecessary. And, of course, the court was making this decision on the basis of Walker's personal capabilities but in the context of the difficulty of litigating this case. And the court correctly concluded that this was not a particularly difficult case to litigate. The law was straightforward. The facts were uncomplicated. Walker had personal knowledge of the facts that gave rise to his claims. There was no medical evidence involved in this claim. There was no need for expert testimony. At trial, Walker presented his own testimony. He elicited supporting testimony from other witnesses. The defendants and their witnesses testified to the contrary, and the jury figured out who was telling the truth. And so when you look at the way that the court considered each and every request, the first request was filed along with the complaint, and so at that point the court did rely fairly heavily on the simplicity or complexity of the claim, the quality of the complaints in his litigation history, because that's really all the court had. In the second request, Walker submitted evidence in support of his earlier assertion that he had intellectual limitations. The court considered that in its denial of the second and third requests and explicitly mentioned it again in, I believe, the denial of the sixth request. The court was aware that Walker was receiving the help of a jailhouse lawyer through the early portions of the proceedings. The court specifically mentioned that in its denial of the second and third requests and its denial of the fifth request, saying that, well, whether or not you have a jailhouse lawyer doesn't prove one way or another whether you're competent, but to this point at least Walker has been able to identify and obtain relevant evidence. The jailhouse lawyer isn't going to be there on the day of trial. No, exactly, and that's why in the fifth request the court, while denying the request to recruit counsel at point set, but I will try to recruit counsel to represent you at trial. And what happened between the fifth and the sixth is there was an interim where the court received new information. It was able to observe how Walker proceeded during the pretrial proceedings. Well, all pretrial proceedings, but the thing is, when you stack all that on top of the fact that we've got a video situation where you don't have a tangible give and take, you call it tangible, meaning you face-to-face with whatever, that you really don't have the same thing as if it's a pretrial where he's there and I guess he's there. Did they do everything by video? Well, the pretrial conferences were by video conference, just as the trial was, so the court did have the opportunities to see how Walker was able to operate in a video setting. So maybe that, given that, that was what he based it on. He said because he's already been on video and did okay. It just seems to me that that's kind of tough because there was some misunderstanding and said I can't see him and did you hear what he said and that sort of thing. The judge is trying to reside over this from where he is. Correct, Your Honor. I mean, the court, I think the only reasonable way to interpret and compare the denial of the fifth request and the sixth request is to say that what changed the court's mind was her ability to observe the way that Walker comported himself during those video conference trials because otherwise nothing else had changed between the fifth and the sixth. Judge Myerscough made that decision. Correct, Your Honor. But Judge Baker tried the case. Judge Baker. So he never had that opportunity, right? No, Judge Baker tried the case and although counsel talked about how the location of the trial had moved, there was evidence in the record during the trial that they had a very large video screen at Judge Baker's courtroom as well. Judge Baker was familiar with the technology. He had experience conducting video trials before. No, but he didn't have the benefit that Judge Myerscough had that you're just talking about of witnessing or looking at the plaintiff here and how he behaved himself. Right. At pretrial. That's true, Your Honor, but Judge Baker also never ruled on any of the requests to recruit counsel and he didn't have a sui sponte obligation. But those requests were sort of out there, right? He asked five or six times for a lawyer. He asked six times and I think Judge Baker. And the jury couldn't even hear him half the time. Well, I disagree. Maybe not half the time. Yeah, I disagree with that, Your Honor. There were a handful, maybe five or six moments where somebody said that you need to speak up louder, the jury can't hear you. But first of all, that happens during live trials as well as video trials. Some witnesses mumble. Some lawyers don't talk loud enough. So there's no indication that the quality of the trial was any worse here as a result of the video technology. What do you say about the discovery problem? The discovery issue actually shows why counsel was not necessary during that part in the litigation because Walker successfully brought the issue to the court's attention. Walker successfully obtained orders from the court directing the defendants to respond to his discovery requests and produce specific evidence. And the reason that the video was not produced is because there was no video. That's what the defendants explained in their response to the request, that the video he was seeking just didn't exist, that there was no specific video policy. But there was a video camera in the hallway at the time of the incident, right? We think so. Lieutenant French testified to that. So if you were representing this guy as a plaintiff, the first thing you would do when you filed the complaint would be what? You'd file a document request or a request to produce and thereby freeze all of the evidence that might support your client's claim, right? Yes. But as we argued in our response to Walker's motion in limine seeking a negative inference instruction, this is document 136, by the time he had even filed the complaint, there was no video for us to discover or turn over. Moreover, the defendants and the parties to this case had no control over whether or not the video existed or was produced or was kept. How was he, a man with a 76 IQ and segregation, able to challenge that proposition? Well, he can do it as he did through the discovery request, and, Your Honor, that type of problem is one that is faced by every plaintiff who's an inmate. And as this Court's explained, those sort of normal burdens that plaintiffs face cannot be enough to require the recruitment of counsel. Otherwise, you would have counsel being recruited in every case. And that's why we have- No, no, no. When a defendant in a prison setting like this says evidence that should exist doesn't exist, what do you do about that? You take the deposition of everybody who has knowledge of whether or not that's correct, right? Was he able to do that? There was nothing, I guess, that would prevent him from doing it. But the deposition, again, the evidence in the records suggests that this video was kept because the policy depends on the facility, it depends on the camera, that these videos are kept for a certain amount of time and they're automatically taped over. We pointed out in our response to the motion in limine that this video, if it even existed, would have existed for roughly 15 days and so would not have been the type of thing that we could have even handed over. So the discovery issue was resolved by the magistrate judge and is just another example of the court ensuring that during the discovery phase, plaintiff Walker got everything pretty much that he was looking for. It went on in a way that was effective. And then the court recognized that there was a difference when things go to trial. So the court initially was ready, willing, and able to appoint counsel, recruit counsel, sorry, and it was only after she had the opportunity to observe the way that he performed in a similar setting that the court decided that counsel was unnecessary. And so given all of that, the court did not abuse its discretion when it denied counsel. But even if the court had abused its discretion, reversal still would not be warranted because Walker hasn't met his burden of demonstrating prejudice. Well, there's one other thing here. As everybody knows, I've been here a long time, so it's been a long time before I had a jury trial. I was never a judge. The first time I was a judge is when I got here. But there is something about a jury and the voir dire, the idea of having some, depends on the judge, but having some communication eye to eye where you see the jury and you're talking to them, you get some feeling for them, especially when there is a voir dire. And did he do that? Yes, there was a voir dire. By him? Yes, I'm pretty certain. See, he didn't know how to do that. Well, but in terms of the video. I know it's a civil case, and I realize this is a prisoner and this is everything else, but it's just when you're on video, it's got to be a lot different. Well, yes, Your Honor, but I mean, these same exact issues were present in Perotti and in Thornton. And in both of those cases, this court affirmed the decision to conduct the trial by video conference. And in fact, this case falls well within Perotti, for example, because in Perotti, the pro se plaintiff conducted the trial by video, but the defendants and their lawyers participated in the trial in person. Here, everybody operated by video. And so you didn't have that sort of asymmetry that you had in Perotti. And there was a question here about whether one of the witnesses was being prompted. There was one moment while I believe it was Officer Schmelz was talking about the physical layout of Gallery 1 that Walker claimed that Lieutenant French was mouthing something to him. And the court immediately intervened and said that you shouldn't be doing that. Stop it if you are. So it was a very minor moment that didn't happen. But a moment, and how many other moments might there have been? How do you justify the closing argument where the defense lawyer said that Pontiac houses the worst of the worst? Can you defend that? Well, there was some relevance to some of the argument about how Gallery 1 in particular was used for inmates who were being moved there for disciplinary reasons. That was a big part of the trial. Under either version of events, Walker was moved from Gallery 5 to Gallery 1 for disciplinary reasons and would have needed to have been shackled. But even if that comment about the worst of the worst is improper, it doesn't rise to the level of plain error as to establish that the trial was one and only fair. But if he had had a lawyer, there would have been probably a motion in limine to keep out 404B evidence like that. Well, I mean, some of the evidence. It was character. Wasn't it character evidence, improper character evidence? Well, it was just the one comment, though, Your Honor, which is rarely, if almost ever, never sufficient to satisfy the plain error standard. It was a limited instance, and certainly there was plenty of evidence that even Walker put forward that made it very clear that he was, I mean, this was a prisoner case, and everybody knew that he was moved to Gallery 1. They disagreed over the reason why, but I see my time is up. Thank you, counsel. If I may, I'll just ask one more question back to the jury. Yes. Did the judge conduct a Vardar? I believe so. I'm just curious about this because this is a jury trial. It's so much different. I know it's a civil case, but it's different than pretrial and even there are before the judge, et cetera. When you've got, what is it, six or eight, whatever they put seat juries with nowadays, that's a whole different deal. They're making the decision. Now, in some federal courts, at least back when I did it, state court was great. I always could do the Vardar myself, and I love doing that. You have a great time. In federal court, the judge took over, and you could submit questions and that sort of thing. What happened here? I don't have the specifics of the Vardar. There's nobody who's made an issue of it, but I am curious about it. I know it's a civil trial, but it is a jury trial. Yes, but one thing I would like to say, Your Honor, to that point is that both Perotti and Thornton were conducted pro se. I'm not off the top of my head. I can't remember if they were both jury trials, but they both involved questions of credibility, and Thornton, the plaintiff pro se, had to examine 12 witnesses of his own and cross-examine others. So I just think it would be really hard. When the district court made its decision on the video conference, it was acting well within the guidance that was given to it from Perotti and Thornton. There was no question that Walker posed a compelling security risk, and the court took sufficient precautions to make sure that Walker could try his case by video just about as well as he could have in person. Thank you, counsel. Thank you. Mr. Halter? May it please the court, my name is Sam Halter, and I'll be continuing argument on behalf of Mr. Walker. We'd like to make three points today. You're going to have to speak louder. I apologize. We'd like to make three points today. First, yes, they did hold the voir dire and there were issues. Both the judge and the court reporter commented that they could not hear or understand what Walker was saying at multiple points. Second, we'd like to discuss the abuse of discretion standard. We understand that this is a high bar, but it's met here because this case is unique, both procedurally and substantially. Because first, opposing counsel says that this would be every case. That's simply not true. It's not just that he's a pro se prisoner plaintiff. This just isn't an employment or medical malpractice suit. This is a special kind of pro se case. Not only that, but as my co-counsel brought up, there are roughly 18,000 of this type of trial each year, and only 169 of them actually go to a jury trial. That's two per district per year, and that would include everybody who was able to afford their lawyer. That would include everybody who didn't want a lawyer, and that would include everybody who doesn't meet the standard that they have to search for their own lawyer. Well, I'm going to interrupt you because I want to make sure to get to this point. My concern here is prejudice because you have to show not just that the district court abused its discretion and not giving him counsel, but our recent cases about this issue have pointed to something that really would have made a difference, some failing where counsel could have really helped. So what is yours? Could you be a little bit more specific than you were in the brief? Sure. As to prejudice, we have a few reasons why. First, he was unable to get discovery. He was also unable to get the only non-prisoner witness. The judge claimed that it would be duplicative testimony, which goes to credibility. Additionally, as my opposing counsel said, Judge Baker did scold the coaching of witnesses. However, there were no teeth. There was no effective way for him to see what was going on, and the only people in the room that were judging it were the defendants, the prison guards. And not only that, but if, well, I'd like to move back to the substantive analysis of Pruitt because the court did correctly identify that legal standard and they did not apply it because Pruitt's asking whether Walker was capable to litigate the case. The fact that they said it was simple isn't actually investigating what the factors say. And if you look to, and for these reasons, we hope that you reverse. Thank you, counsel. The case is taken under advisement.